**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

GAIL ENGRAM,

        Plaintiff,

vs.                                                CASE NO. 3:09-cv-540-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB"). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations.

Accordingly, the instant matter has been decided on the written record. For the reasons set forth herein, **the Commissioner's decision is REVERSED and REMANDED**.

**I. Procedural History**

Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") on November 17, 2003, alleging she became disabled on August 16, 1999 (Tr. 63).[1] This application was denied initially and upon reconsideration (Tr. 30, 35). After holding a hearing on February 15, 2006 (Tr. 332-78), administrative law judge, James R. Russell, issued a decision, dated August 15, 2006, denying Plaintiff's claim (Tr. 17-27). The Appeals Council subsequently denied Plaintiff's request for review (Tr. 22). Having exhausted her administrative remedies, Plaintiff then sought this Court's judicial review.

On May 15, 2008, this Court entered a judgment reversing the Commissioner's decision and remanding the case for further administrative proceedings to, *inter alia*, re-assess Plaintiff's subjective complaints of pain (Tr. 410-20). The Appeals Council then vacated Judge Russell's decision and remanded the case (Tr. 423).

On March 5, 2009, a hearing on remand was held before administrative law judge, Stephen C. Calvarese (Tr. 858-96). Subsequently, on April 1, 2009, ALJ Calvarrese (the "ALJ") denied Plaintiff's application (Tr. 382-92). Plaintiff has again exhausted her administrative remedies, and appeals to this Court (Doc. #1). The matter is now ripe for review under 42 U.S.C. § 405(g).

**II. Standard of Review**

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death

---

[1] Plaintiff subsequently amended her disability onset date to April 1, 2004 (Tr. 444).

or last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. §§ 404.1520(a)(4)(i-v); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

### III. Background Facts

Plaintiff was born on May 26, 1957, making her 48 years old when her insured status expired on December 31, 2005 (Tr. 63, 384, 890). She has some college education and past relevant work experience as a customer service clerk, insurance clerk, and administrative clerk (Tr. 69, 75, 889). Plaintiff alleges she became disabled on April 1,

4

2004, due to scoliosis, degenerative disc disease, spinal stenosis, bilateral carpal tunnel syndrome, and lumbar radiculopathy (Tr. 63, 68).

As early as August 1999, Plaintiff sought treatment from James B. Dolan, M.D. ("Dr. Dolan") for complaints of low back pain (Tr. 121). She reported that while she had experienced back pain for years it recently became exacerbated as a result of her workplace chair and computer desk environment (Tr. 121). Dr. Dolan ordered a MRI which revealed moderate spinal stenosis at L4-5, due to a disc protrusion and facet osteoarthropathy, and mild spinal stenosis due to a central disc bulge at L5-S1 (Tr. 120). From April 6, 1999 through May 7, 2004, Plaintiff was treated by Reginald Sykes, M.D. ("Dr. Sykes") (Tr. 182-244). Dr. Sykes' treatment notes reveal that on numerous occasions he treated Plaintiff for low back pain (Tr. 189, 195, 242, 198, 233, 239, 244).

A MRI dated April 1, 2004 (Plaintiff's alleged onset date of disability), revealed a L4-5 disk protrusion, with compression on the thecal sac,[2] and a L5-S1 diffuse disk bulge with evidence of a right annular tear (Tr. 617). On May 11, 2004, Plaintiff began pain management treatment from Orlando Florete, M.D. ("Dr. Florete") of the Institute of Pain Management (Tr. 270, 730). At that time she reported "severe persistent low back pain," and that her pain medications were only taking the edge off her pain (Tr. 270). She also noted that she was only able to drive short distances, that she could only perform a little housework, and that she was unable to engage in any recreational activities (Tr. 271). Dr.

---

[2] The thecal sac is an elongated membraneous tube that extends from the brain to the end of the spine in which the spinal cord and nerve roots run. It is made up of (and is continuous with) the membrane that covers the brain. MY-SPINE.COM, http://www.my-spine.com/terminology-for-ct-scans-and-mri-scans-lumbar-region.html (last visited on Sept. 21, 2010).

Florete's examination revealed an inability to flex, extend, rotate or lateral bend her lumbar spine, and that she exhibited exaggerated tenderness upon minor palpation (Tr. 272). She was also unable to perform a heel-to-toe gait (Tr. 273). Dr. Florete's impression was severe lumbar intervertebral disc and joint disease, history of spinal stenosis, and current annular tear at L5-S1(Tr. 273).

Lumbar epidural steroid injections were performed on May 18, 2004 and May 25, 2004 (Tr. 245, 724-27). Following these injections, Plaintiff reported severe back spasms and pain to Roberto Saucedo, M.D. ("Dr. Saucedo") of the Institute of Pain Management (Tr. 268; 720). On June 8, 2004, Dr. Florete's treatment notes provide: "The patient [Plaintiff] presents here today after having complications from an epidural two weeks ago" (Tr. 718-19). On June 14, 2004, Plaintiff was prescribed a cane due to lumbar degenerative joint disease and gait instability (Tr. 717). On June 29, 2004, Plaintiff reported increased pain, burning, and spasms across her lumbar spine (Tr. 263).

On July 21, 2004, Plaintiff sought emergency room treatment for "severe back pain"(Tr. 553). Following continuing complaints of severe back pain, on July 30, 2004 and August 31, 2004 (Tr. 259-60, 711-14), trigger point injections were provided (Tr. 262).

Left L3-4, L4-5, and L5-S1 facet joint injections were performed on June 24, 2005 and July 14, 2005 (Tr. 280, 692, 694). On July 20, 2005, Plaintiff reported her legs giving out and experiencing a fall (Tr. 690). A walker with wheels was prescribed on August 8, 2005 (Tr. 684).

Plaintiff was examined by Sunday Ero, M.D. ("Dr. Ero"), an orthopedic surgeon, on October 14, 2005 (Tr. 330). His impression was lumbar degenerative disease at L4-5 and L5-S1 with intractable back pain (Tr. 330)  He ordered that a discogram be performed on

Plaintiff's lumbar spine (Tr. 330).[3]  Consequently, a discogram was performed on November 14, 2005, which revealed leaking L4-5 and L5-S1 posterior central annular tears (Tr. 293-95).  Dr. Ero reviewed the discogram results on December 3, 2005 and noted that Plaintiff's symptoms were consistent with discogenic pain[4] and that she required a rheumatology follow-up before any possible surgical treatment could be performed (Tr. 327).  He also noted that Plaintiff may be considered for surgical treatment with an L5-S1 and L4-5 disc replacement versus a disc fusion (Tr. 467).  Testing performed on June 7, 2005 revealed a high rheumatoid arthritis factor (Tr. 321).

After a review of the medical evidence and Plaintiff's testimony, the ALJ determined Plaintiff's only severe impairment was degenerative disc disease (Tr. 384).  In addition, the ALJ determined that, through the date of Plaintiff's last insured status, she had the residual functional capacity ("RFC") to perform a limited range of light work (Tr. 386).  A vocational expert who attended the March 5, 2009 hearing (the "VE") testified that a 48 year old individual with Plaintiff's education, work experience, and RFC could work as an insurance clerk, administrative clerk, or customer service clerk (Tr. 391- 92, 891-93).  As a result, the ALJ determined Plaintiff retained the ability to perform her past relevant work, *supra*. In accordance therewith, the ALJ found Plaintiff was not disabled at any time from April 1,

---

[3]A discogram is an invasive procedure where dye is injected under low pressure into the center of several spinal disks.  An x-ray or CT scan is then performed in order to see whether any of the discs are damaged.  THE MAYO CLINIC, http://www.mayoclinic.com/health/discogram/MY01038 (last visited Sept. 22, 2010).

[4]Discogenic pain is pain associated with an abnormality of an intervertebral disc.  The pain can come from the disc itself when a tear in the disc wall [*i.e.*, an annular tear] irritates the disc's nerves; or, the pain can arise when deteriorating disc material presses upon nerve roots or the spinal cord.  THE LASER SPINE INSTITUTE, http://www.laserspineinstitute.com/back_problems/discogenic/pain (last visited on Sept. 21, 2010).

7

2004 (her alleged disability onset date), through December 31, 2005 (the date her insured status expired) (Tr. 392).

### IV. Analysis

Plaintiff's primary argument on appeal is that the Commissioner has, for a second time, improperly discounted her pain testimony (Doc. #11 at 14-21). The Court agrees.

The Eleventh Circuit pain standard requires evidence of an underlying medical condition, and either objective medical evidence that confirms the severity of the alleged pain arising from that condition, or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). After considering a claimant's complaints of pain, the ALJ may reject them as not credible, however, that determination will be reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (*citing Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)); *see also Cartwright v. Heckler*, 735 F.2d 1289, 1290 (11th Cir. 1984) (finding the credibility of a claimant's testimony is the duty of the Commissioner).

Additionally, the Regulations state that when the medical signs or laboratory findings document a medically determinable impairment that could reasonably be expected to produce the pain alleged, the Commissioner must then evaluate the intensity and persistence of the pain to determine how it limits the claimant's capacity for work. 20 C.F.R. § 404.1529(c). In evaluating the intensity and persistence of a claimant's pain, the ALJ shall consider all of the available evidence, including the claimant's statements, signs and laboratory findings, and statements from treating and non-treating sources. 20 C.F.R. § 404.1529(c).

Case 3:09-cv-00540-TEM   Document 14   Filed 09/27/10   Page 9 of 14 PageID 100

Here, Defendant states: "[a]s this Court has repeatedly held, 'if an ALJ gives at least three reasons for discrediting a plaintiff's subjective complaints, a court may find the ALJ properly discredited the testimony.'" (Doc. #12 at 6) (*citing Stanton v. Astrue*, 617 F. Supp. 2d 1205, 1217 (M.D. Fla. 2008). While this statement is correct, the proffered reasons cited by the ALJ must also be supported by the record evidence. In this instance, the Court finds the reasons proffered by the ALJ to discredit Plaintiff's pain testimony are deficient. Therefore, the case shall be reversed and remanded for further proceedings.

To illustrate, the ALJ cited four (4) reasons in support of his determination that Plaintiff's "pain complaints are exaggerated," and thus, her statements regarding the limitations that stem from her pain are "not credible" (Tr. 390). First, the ALJ states, "[w]hile there is objective evidence of some disc degeneration, there is no sign of neural compromise that would support the level of pain complained of by [Plaintiff]" (Tr. 390). A careful review of the record evidence, however, reveals this statement to be only partially correct.

More particularly, although Plaintiff's imaging studies show no sign(s) of nerve-root impingement, Plaintiff's imaging studies reveal that Plaintiff also suffers from: (1) L4-5 and L5-S1 facet osteoarthritis; (2) L4-5 and L5-S1 disc bulges that cause mild to moderate spinal stenosis (and which are mildly compressive on the thecal sac); and (4) discogenic pain resulting from leaking annular tears at the L4-5 and L5-S1 levels (*see* Tr. 120, 285, 293, 465, 519, 550, 617, 697, 746, 773).

The Regulations provide that a claimant's impairments will be considered in combination. 20 C.F.R. § 404.1545(2). Moreover, Social Security Ruling ("SSR") 96-7p is instructive on the issue:

9

> Assessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function *must* be based on a consideration of *all* of the evidence in the case record.

1996 WL 374186, at *5 (S.S.A. Jul. 2, 1996) (*emphasis added*).

The ALJ's failure to consider all of Plaintiff's aforementioned impairments, in combination, is particularly significant in this instance as Plaintiff's annular tears alone could support Plaintiff's complaints of pain (*see* n. 3, *supra*). Moreover, once Dr. Ero read the results of Plaintiff's discogram, he noted that Plaintiff's symptoms were indeed consistent with discogenic pain (Tr. 327). Accordingly, the Court finds the ALJ's statement that, since there is no evidence of neural compromise, Plaintiff's "pain complaints are exaggerated" is not supported by the record—when viewed in its entirety.

The second reason the ALJ provided for discounting Plaintiff's subjective complaints of pain is also deficient. More particularly, in support of his determination in this regard, the ALJ stated: "Dr. Tran's examination showed that [Plaintiff] was able to lift twenty pounds, and examinations conducted [by] Dr. Tran and Dr. Lohso [sic], showed that [Plaintiff] was able to walk on her heels and toes, which would not be expected if [Plaintiff's] complaints were accurate (Tr. 390). A close reading of the record reveals that this statement is, likewise, only partially correct. For instance, on December 1, 2004, Dr. Loshe noted that Plaintiff "can walk on her toes and heels," however, the notation continues, "but [she] complains of pain with those maneuvers" (Tr. 288). It should be noted that both Dr. Tran's and Dr. Loshe's examinations were conducted just prior to Plaintiff's alleged disability onset date (*see* Tr. 169-72, 288). Additionally, Dr. Florete's May 11, 2004 examination findings included that Plaintiff was "unable to perform heel to toe gait" (Tr. 273). Further, a notation

from Dr. Ero's examination, performed October 14, 2005, reveals that Plaintiff was "unable to actually walk on her toes and heels" (Tr. 330).

While the ALJ is charged with the duty to resolve any conflicts in the evidence, the ALJ in this instance did not explicitly do so—he simply stated that Plaintiff's ability to heel/toe walk belies her complaints of pain (Tr. 390). Although the ALJ's finding in this regard, alone, might not constitute reversible error, the Ninth Circuit has found remand warranted where the ALJ's "paraphrasing of record material is not entirely accurate regarding the content or tone of the record." *Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998). The Court finds such is the case here.

The ALJ's third proffered reason for discounting Plaintiff's credibility regarding her subjective complaints of pain was as follows: "Dr. Ero specifically noted that [Plaintiff's] complaints were not consistent with the objective medical findings" (Tr. 390; *see also* Tr. 330). Again, the ALJ's statement in this regard is not completely accurate. To illustrate, Dr. Ero's statement of October 14, 2005 reads, in its entirety, as follows: I cannot completely rule out psychological overlay in the patient's [Plaintiff] symptoms because **some** of her clinical symptoms are not consistent with the [MRI] findings" (Tr. 330) (*emphasis added*).

Presumably, since some of Plaintiff's pain symptoms seemed to exceed what Dr. Ero observed from reading Plaintiff's MRI images, Dr. Ero ordered that Plaintiff undergo a discogram, and additionally stated he would obtain "plain x-rays" at the time of her next visit (*see* Tr. 330). On December 2, 2005, Dr. Ero read the results of Plaintiff's discogram, which revealed annular tears at the L4-5 and L5-S1 levels, and determined Plaintiff's

11

"symptoms **are** consistent with discogenic pain" (Tr. 327) (*emphasis added*). Moreover, Dr. Ero noted that Plaintiff may be a good candidate for disc replacement surgery (Tr. 327). As noted above, a complete reading of the record reveals that the ALJ's paraphrasing of the record evidence was not entirely accurate regarding the content or tone of the record. Accordingly, the Court finds this proffered reason for discounting Plaintiff's pain testimony to be deficient.

For the ALJ's fourth and final reason in support of his determination that Plaintiff's pain complaints are not entirely credible, the ALJ states: "there "is **no record** of [Plaintiff] being prescribed a cane following epidural injections, and the operative reports and radiological evidence do not indicate that any complications occurred during these procedures that would cause the weakness as complained of by [Plaintiff]" (Tr. 390) (*emphasis added*). Although it is true that the operative reports and radiological evidence do not indicate that there were complications during such procedures, the ALJ's statement that there is no record of Plaintiff being prescribed a cane subsequent to the epidural injections is untrue.

Specifically, Plaintiff received the subject epidural injections on May 18, 2004 and May 25, 2004 (Tr. 245, 724-27). On June 8, 2004, Dr. Florete's treatment notes provide: "The patient presents here today after having complications from an epidural two weeks ago" (Tr. 718-19), and on June 14, 2004 she was prescribed a cane (Tr. 717; *see also* Tr. 390). Moreover, on August 8, 2005, Plaintiff was prescribed a walker due to severe degenerative disc disease and "gait dysfunction" (Tr. 684).

This case was first remanded because, *inter alia*, ALJ Russell did not properly address Plaintiff's pain testimony (*see* Tr. 410-20). Now the case must be remanded for a second time due to the ALJ's deficient discounting of Plaintiff's subjective pain testimony. When the Commissioner fails to properly discount a claimant's testimony regarding subjective complaints of pain, as a matter of law, that testimony must be accepted as true. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). As this is the second time the Commissioner has failed to properly discount Plaintiff's testimony regarding her subjective complaints of pain, the Court will direct that, on remand, Plaintiff's testimony in this regard be accepted as true.

For the aforementioned reasons, the Court finds the ALJ did not apply the proper legal standards in denying Plaintiff's disability claim. Accordingly, the decision of the Commissioner will be reversed and remanded for additional proceedings consistent with this Order and Opinion.

## V. Conclusion

As the Court finds the decision of the Commissioner is neither supported by substantial evidence, nor decided according to proper legal standards, the Commissioner's decision is hereby **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

Upon remand, the Commissioner shall re-evaluate Plaintiff in accordance with the applicable Regulations and prevailing case law. The additional proceedings should include, but are not limited to: re-assessment of the severity of **all** of Plaintiff's medically determinable impairments; **acceptance of Plaintiff's testimony regarding her subjective**

13

**complaints of pain** and, in light thereof, re-consideration of the opinions of Plaintiff's examining and treating medical sources; re-consideration of the opinions of non-examining medical sources; re-assessment of Plaintiff's RFC; and, if warranted, additional vocational expert testimony.

### VI. Directions as to Judgment

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file. The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits. *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 n. 2 (11th Cir. 2006) (recognizing that the fourteen (14) day filing period for a claim for attorney's fees, set forth in Rule 54 of the Federal Rules of Civil Procedure, may be an unworkable time-line in cases remanded to the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g)); *compare with* Fed. R. Civ. P. 54(d)(2)(B) and M.D. Fla. Loc. R. 4.18(a) (requiring that unless a statute or court order provides otherwise, any motion for attorney's fees must be filed no later than fourteen (14) days after entry of judgment).

**DONE AND ORDERED** at Jacksonville, Florida this 27th day of September, 2010.

Copies to all counsel of record

*Thomas E. Morris*
THOMAS E. MORRIS
United States Magistrate Judge